JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

WHITNEY PRICE

**DEFENDANTS**

THE AMERICAN BOARD OF INTERNAL MEDICINE

**(b)** County of Residence of First Listed Plaintiff  MONTGOMERY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  PHILADELPHIA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Brian C. Farrell, Esq. Sidney L. Gold & Assoc., P.C.
1835 Market St., Ste. 515, Phila, PA 19103 215-569-1999

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.; the Americans with Disabilities Act, 42 U.S.C. §12101, et seq,

Brief description of cause:
Employment Discrimination Matter

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
150,000 IN EXCESS

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 01/23/2024 | /s/BRIAN C. FARRELL, ESQUIRE  I.D. No.: #319145  Attorney For Plaintiff |

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 135 Bickley Road  Glenside, PA 19038 _____

Address of Defendant: _____ 510 Walnut Street, Suite 1700, Philadelphia, PA 19106 _____

Place of Accident, Incident or Transaction: _____ 510 Walnut Street, Suite 1700, Philadelphia, PA 19106 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 01/23/2024     /s/Brian C. Farrell, Esquire     319145

                      *Attorney-at-Law / Pro Se Plaintiff*       *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.**   *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I,   BRIAN C. FARRELL, ESQ.  , counsel of record *or* pro se plaintiff, do hereby certify:

☑   Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑   Relief other than monetary damages is sought.

DATE: 01/23/2024     /s/Brian C. Farrell, Esquire     319145

                      *Attorney-at-Law / Pro Se Plaintiff*       *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| WHITNEY PRICE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| THE AMERICAN BOARD OF | : | |
| INTERNAL MEDICINE | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.       ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.       ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)       ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (☑)

| | | |
|---|---|---|
| 01/23/2024 | /s/ Brian C. Farrell, Esq. | PLAINTIFF |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 569-1999 | (215) 569-3870 | bfarrell@discrimlaw.net |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WHITNEY PRICE | : |
| | : |
| Plaintiff | : |
| | : |
| v. | : |
| | : |
| THE AMERICAN BOARD OF | : |
| INTERNAL MEDICINE | : |
| | : |
| Defendant | : |
| | : |

C.A. NO.:

JURY TRIAL DEMANDED

<u>CIVIL ACTION COMPLAINT</u>

**I.    PRELIMINARY STATEMENT**

Plaintiff, Whitney Price, through her undersigned counsel, files this Civil Action Complaint against her former employer, Defendant The American Board of Internal Medicine. Plaintiff was discriminated against and subjected to a hostile work in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII"); 42 U.S.C. §1981 ("Section 1981"); the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*., ("ADA"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq*. ("PHRA"). Plaintiff seeks all available damages, including economic loss, compensatory, and punitive damages, along with all other relief under applicable federal and state law as this Court deems appropriate.

**II.    PARTIES**

1.    Plaintiff Whitney Price ("Plaintiff") is a woman and citizen of Pennsylvania, residing in Ambler, PA 19002.

1

2.     At all relevant times, Defendant The American Board of Internal Medicine ("Defendant") was and is a foreign not-for-profit corporation duly incorporated under the laws of the State of Iowa.

3.     At all relevant times, Defendant was authorized to conduct business, and does conduct business, under the laws of the Commonwealth of Pennsylvania.

4.     At all relevant times, Defendant was and is a physician evaluation organization that certifies physicians practicing internal medicine, and which is headquartered at 510 Walnut Street, Suite 1700, Philadelphia, PA 19106. Plaintiff worked for Defendant at this location.

5.     At all relevant times, Jerome Clauser ("Mr. Clauser") was and is Defendant's "Senior Director."

6.     At all relevant times, Mr. Clauser was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

7.     At all relevant times, Bernadette Horvat, ("Ms. Horvat") was and is Defendant's "Vice President."

8.     At all relevant times, Defendant employed more than 15 employees.

9.     At all relevant times, Defendant was an employer within the meaning of the state and federal laws which form the basis of this action.

10.     At all relevant times, Plaintiff was an employee of Defendant within the meaning of the state and federal laws which form the basis of this action.

11.     At all relevant times, Defendant acted by and through its authorized agents, servants, contractors or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

III.   **JURISDICTION AND VENUE**

12.   The causes of action set forth in this Complaint arise under Title VII, 42 U.S.C. § 2000e, *et seq*. (Count I); the ADA, 42 U.S.C. §12101, *et seq.*, (Count II); and the PHRA, 43 P.S. §951, *et seq*. (Count III).

13.   The District Court has subject matter jurisdiction over Count I (Title VII) and Count II (ADA) pursuant to 28 U.S.C. §1331.

14.   The District Court has supplemental jurisdiction over Count III (PHRA) pursuant to 28 U.S.C. §1367.

15.   Defendant is subject to the personal jurisdiction of this Court because, among other things, the case arises out of or relates to the contacts of Defendant with Pennsylvania, the contacts of Defendant are continuous and systematic such that Defendant is at home in Pennsylvania, or Defendant has consented to personal jurisdiction by personal service within Pennsylvania via an authorized agent of the corporation.

16.   Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

17.   Plaintiff dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission complaining of the acts of discrimination and retaliation alleged herein.

18.   On October 26, 2023, the EEOC issued a Notice of Right to Sue to Plaintiff.

19.   Plaintiff has filed this action within 90 days of her receipt of this notice.

20.   Plaintiff has complied with all administrative and jurisdictional prerequisites for the commencement of this action in this Court.

IV.    **FACTUAL ALLEGATIONS SUPPORTING CLAIMS**

21.    On or about February 13, 2019, Plaintiff began working for Defendant as an "Research and Innovative Program Associate," with an annual salary of $84,000.

22.    In this role, Plaintiff worked in Defendant's "Assessment and Research" department, and was responsible for evaluating, reviewing, and developing materials/tutorials for the administration of the organization's medical exams.

23.    At first, Plaintiff enjoyed working at Defendant and anticipated a long career with the organization.

24.    However, soon after beginning her employment, Senior Director, Mr. Clauser, began to sexually harass Plaintiff at work.

25.    For example, beginning in or around April 2019, Mr. Clauser started to ask Plaintiff for a hug nearly every time he walked into her office. Plaintiff thought this was odd, but reluctantly acquiesced to these hugs because Mr. Clauser was her boss, and because she did not suspect his ulterior sexual motive at the time.

26.    However, over the next few months, Mr. Clauser's hugs increased in frequency and intensity.

27.    In fact, on several occasions, Mr. Clauser pulled Plaintiff so close to his body that she could actually feel his erect penis.

28.    Therefore, to stop this unwanted touching, Plaintiff constantly told Mr. Clauser that she was "not a hugger" or a "touchy feely person," in hopes that it would deter further hugs.

29.    However, over the next year, despite her repeated objections, Mr. Clauser continued to hug Plaintiff anyway.

30.     Then, in or around March 2020, because of the COVID-19 pandemic, Defendant instructed its entire staff, including Plaintiff, to work from home.

31.     At that time, Plaintiff was relieved because she would be separated from Mr. Clauser and would not have to interact with him in the office.

32.     However, Mr. Clauser quickly resumed his sexually harassing behavior.

33.     For example, in or around June 2020, Plaintiff was participating in a virtual one-on-one session with Mr. Clauser when she expressed her support of police officers in light of the Black Lives Matter movement. Mr. Clauser callously replied, "How could you even like police officers as a black woman?" Plaintiff was offended by Mr. Clauser's racist assumption that she, as an African-American woman, had an inherit bias and/or disdain for police officers.

34.     Nevertheless, Plaintiff told Mr. Clauser that she respected police officers because she had friends that worked in law enforcement.

35.     In response, Mr. Clauser became visibly agitated and insinuated that Plaintiff liked her friends that worked in law enforcement because she was having sex with them. Mr. Clauser stated, "Why do you like them? Because you are fucking them? Does your friendship stop before or after going to bed with them?" Plaintiff did not respond and immediately logged off the meeting.

36.     Though Plaintiff was humiliated by Mr. Clauser's misogynistic remarks, she did not complain because she did not want to lose her job, needed and income, and reasonably believed it would be futile because her harasser was Defendant's Senior Director.

37.     Consequently, Mr. Clauser's sexual harassment continued and escalated.

38.     For example, over the next year, Mr. Clauser routinely asked Plaintiff for her home address during their virtual check-in meetings.

39.     In fact, Mr. Clauser even asked Plaintiff for tours of her home.

40.     Naturally, Plaintiff feared that Mr. Clauser was becoming obsessed with her, refused to provide him with her home address, and repeatedly declined his requests for tours of her home.

41.     As another example, Mr. Clauser would regularly express his contempt for "steroid-induced, muscle-bound men with small dicks." Mr. Clauser would also ask Plaintiff if she was attracted to these types of men, and if she would have sex with them. Each time this happened, Plaintiff ignored Mr. Clauser's inappropriate questions and tried to steer the conversation back to work matters.

42.     Fortunately for Plaintiff, in or around July 2021, she stopped reporting to Mr. Clauser and began working directly with Exam Innovations Manager, Pamela Kaliski.

43.     Accordingly, for next several months, given that she was off Mr. Clauser's "radar," Plaintiff performed her job free from harassment.

44.     Nevertheless, in or around December 2021, Vice President, Ms. Horvat, informed Plaintiff that Defendant was implementing a hybrid word schedule beginning in January 2022, such that she would be required to report to the office two days per week.

45.     But at that time, Plaintiff had been consulting a rheumatologist to treat chronic joint pain, fatigue, weakness, and headaches that she had been suffering from for months.

46.     And while Plaintiff's doctor could not provide a formal diagnosis, he suspected that Plaintiff's symptoms suggested an underlying autoimmune disease, which would have put her at higher risk of contracting COVID-19 and suffering more severe illness from it.

47.     Therefore, in or around the beginning of January 2022, Plaintiff emailed Ms. Horvat, informed her of her medical condition, and asked if she could continue working from home on a full-time basis, given the risk that contracting COVID-19 posed to her health.

48.     Plaintiff also informed Ms. Horvat that she had had multiple conversations with Ms. Kaliski regarding her medical condition, and that Ms. Kaliski supported her request to work from home on a full-time basis, and agreed that she could her job remotely.

49.     Plaintiff wrote:

"Please accept this letter as [a] formal request for an accommodation to work from home due to the current, and continued COVID Pandemic [ ] My doctor has insisted I limit all contact with others due to this condition. Ms. Kaliskil and I are confident I am able to perform the duties of my position while working from home. I have the necessary equipment and any other tools to effectively perform the duties of my position."

50.     Plaintiff also provide Ms. Horvat a doctor's note which stated, "[Plaintiff] is a patient in my care for the treatment of a condition that may cause her to be immune compromised. She should be permitted to work from home to limit her exposure to the COVID-19 virus."

51.     Over the next several weeks, Defendant allowed Plaintiff to continue working from home on a full-time basis, pending a review of her accommodation request by Ms. Horvat. Accordingly, on or about February 23, 2022, Plaintiff attended a meeting with Ms. Horvat and Ms. Kaliski to discuss her accommodation request.

52.     During the meeting, Ms. Horvat informed Plaintiff that Defendant would be denying her accommodation request, and that she was expected to return to the office, fulltime, on April 4, 2022. When Plaintiff asked why her request was being denied, Ms. Horvat replied that Defendant was adopting a "blanket denial policy" with respect to all accommodation requests related to COVID-19.

53.     In other words, Defendant was deliberately refusing to give Plaintiff's reasonable accommodation request fair, individualized consideration.

54.     Nevertheless, on or about March 3, 2022, Plaintiff emailed Ms. Horvat and asked for a written explanation for why her accommodation request was being denied.

55.     Several days later, Ms. Horvat emailed Plaintiff, and now claimed that her accommodation request was being denied because her doctor's note did not specify how long she needed to work from home.

56.     Accordingly, on or about March 28, 2022, Plaintiff emailed Ms. Horvat a second doctor's note, which provided more specificity regarding the time that she needed to work from home (six months). The doctor's note stated: "[Plaintiff] is a patient in my care for the treatment of a condition that may cause her to be immune compromised. She has been referred to several specialists to evaluate her condition. For the next six months, she should be permitted to work from home to reduce her risk of infection."

57.     But the next day, despite providing a specific timeframe for the requested accommodation, Ms. Horvat again told Plaintiff that Defendant could not accommodate her request. In an email, Ms. Horvat wrote:

> "While your concern is understood, [your autoimmune disease] does not constitute a disability . . . As I shared with you in prior discussions, all [Defendant] ABIM employees need to be able to report to the office, as needed or requested. Your role, in particular, has been designated as a position requiring regular, on-site presence. If you have not already done so, please coordinate your return to the office for the week of April 4."

58.     However, this was false, because Plaintiff's job did not require her to be physically present at the office. Plaintiff had also been performing her job remotely since March 2020, and could have continued doing so. And, as mentioned above, Plaintiff's manager, Ms. Kaliski, supported Plaintiff's request to work from home.

59.     In fact, around this same, Defendant was recruiting, and hiring, employees to work on a fully remote basis. Moreover, other employees in Plaintiff's department were not subject to the same April 4, 2022, deadline to return to the office, and were allowed to continuing work from home indefinitely.

60.     Ms. Horvat refused to partake in the interactive process by unilaterally deciding that Plaintiff did not have a disability, even though Plaintiff's doctor had referred her to "several specialists" to properly diagnose and treat her condition.

61.     Therefore, on or about March 29, 2022, Plaintiff emailed Ms. Horvat and complained about the unlawful denial of her accommodation request:

> "…the company [is] refusing an employee with a disability reasonable accommodation, [Defendant] ABIM is granting remote work privileges to employees across the company — including my department The only person I meet with is my direct supervisor who has stated she is in full support of my request, and that I could successfully perform all duties of my job from home, as I have been for the last two years. . ."

62.     Ms. Horvat replied: ". . . Your physician has not indicated that you have a disability . . . [Ms. Kaliski] has not approved you to work remotely on a full-time basis I appreciate your reference to other employees however all are required to be on site, as needed and requested . . ."

63.     Yet again, this was false because Ms. Kaliski had told Plaintiff she supported her request to work from home.

64.     Defendant was also allowing other employees in its Assessment and Research department to work remotely (on a full-time basis) after April 4, 2022.

65.     Still, later that evening, Plaintiff emailed Ms. Horvat and asked what additional information Defendant would need to approve her accommodation request.

66.     Ms. Horvat curtly replied: "Your accommodation request to work full-time remote is not approved, as I indicated to you in my note below yesterday. [Defendant] ABIM is not able to offer full-time remote work as you have requested. All [Defendant] ABIM employees are required to report to 510 Walnut either on a regular basis or as needed, depending on their role."

9

67.     Based on Ms. Horvat's email, Plaintiff realized that Ms. Horvat was frustrated and/or inconvenienced by her need for a reasonable accommodation, and would not continue to engage in the interactive process.

68.     Therefore, on or about March 31, 2022, Plaintiff emailed Ms. Horvat and again complained about the denial of her accommodation request:

> "[T]he company refuses to acknowledge my [ ] need for [a] reasonable accommodation, and appears to be questioning the legitimacy of my medical condition. I shared with my supervisor [Ms. Kaliski] about my ongoing health issues for months prior to [Defendant] ABIM deciding they were requiring me to return to the office. I shared with [Ms. Kaliski] some of the difficulties I had regarding my physical health such as chronic joint pain, fatigue, weakness, headaches and additionally the other implications my health was causing. We discussed in detail on several occasions how exposure to others might result in severe complications for me. While my rheumatologist and I are working toward managing my symptoms as quickly as possible, the process is ongoing and requires additional testing from other specialists before exploring additional therapeutics. In light of all this, [Defendant] ABIM's refusal to grant my accommodation request is bewildering— especially when the company continues to allow multiple people across the organization to work remotely on a full-time basis . . . Unfortunately, it feels like I'm being given an ultimatum to choose between my health and my job . . ."

69.     Additionally, in this email, to accentuate the discriminatory/hostile work environment at Defendant, Plaintiff informed Ms. Horvat about all of Mr. Clauser's sexually harassing conduct from 2019 to 2021, including his constant request for hugs, requests for her home address and virtual tours, and comments about her sexual interactions with men.

70.     On or about April l, 2022, Ms. Horvat informed Plaintiff that Defendant would investigate her complaints, and asked Plaintiff if she wanted to have any interaction with Mr. Clauser moving forward. Plaintiff stated that she did not.

71.     That said, in spite of this, on or about April 4, 2022, Plaintiff was called into a random meeting with Mr. Clauser and Ms. Kaliski.

72.    Mr. Clauser's sexual harassment was not discussed at all during this meeting.

73.    Instead, Mr. Clauser maintained that Plaintiff's position required her to be "on-site," and reiterated that Defendant was not going to approve her accommodation request. Ms. Kaliski was mostly silent during the meeting, and did not opine or comment on Plaintiff's ability to perform her job remotely.

74.    Nevertheless, on or about April 5, 2022, Plaintiff emailed Ms. Horvat and asked if she would be terminated if she did not return to the office. Plaintiff wrote:

"I just wanted to update you on my meeting [yesterday] with [Mr. Clauser] and [Ms. Kaliski]. I was reminded again that my accommodation request will not be granted. While I disagree with [Defendant]'s decision, I need to know how to proceed moving forward . . . I will continue performing my duties remotely, but I cannot return to the office and compromise my health . . . I need to know if I am going to be fired if I do not report to the office this week."

75.    On April 7, 2022, Plaintiff met with Ms. Horvat and Ms. Kaliski to discuss her reasonable accommodation request.

76.    During the meeting, Ms. Kaliski withdrew her support of Plaintiff's accommodation request, and now claimed that her position could not be performed remotely. Ms. Horvat pressured Ms. Kaliski into retracting her support of Plaintiff's accommodation request to justify its denial.

77.    Nevertheless, Ms. Horvat told Plaintiff that she was not going to be terminated, that she could continue working remotely, and requested an updated doctor's note with a diagnosis of her medical condition and explanation for how it prevented her from returning to the office.

78.    Plaintiff assured Ms. Horvat that she would provide said note.

79.    Defendant then started to retaliate against Plaintiff for her request for a reasonable accommodation and sexual harassment complaint.

80.    Specifically, Ms. Horvat and Ms. Kaliski began to fabricate performance issues against Plaintiff to terminate her employment or force her to resign.

81.     For example, on or about April 12, 2022, Ms. Horvat accused Plaintiff of failing to log in and display her availability, on "Webex," Defendant's online message/video conferencing system. However, this was pretext because Plaintiff was always logged into Webex when she worked, and always displayed her availability.

82.     In further retaliation, Ms. Kaliski started to become adversarial towards Plaintiff during their interactions, and excessively micromanage her work.

83.     In fact, on one occasion, Ms. Kaliski yelled at Plaintiff for the way she named a computer file. Significantly, before her request for an accommodation and complaint of sexual harassment, Ms. Kaliski never reprimanded Plaintiff for something so trivial.

84.     Therefore, on April 18, 2022, Plaintiff emailed Ms. Horvat and complained about all of the above-mentioned retaliatory conduct.

85.     Plaintiff also complained about not receiving an update regarding what, if any, disciplinary action and/or remedial measures would be taken against Mr. Clauser.

86.     The next day, Ms. Horvat responded to Plaintiff's email and self-servingly denied any retaliatory behavior on behalf of herself, or Ms. Kaliski.

87.     Ms. Horvat also informed Plaintiff that Defendant had retained an external investigator, Jim Gulezian, to review her claims. Finally, Ms. Horvat instructed Plaintiff to provide an updated doctor's note by May 9, 2022.

88.     Meanwhile, Ms. Horvat and Ms. Kaliski continued to retaliate against Plaintiff.

89.     For example, on or about April 22, 2022, Ms. Kaliski accused Plaintiff of failing to complete a tutorial project before a March 4, 2022, deadline.

90.     Still, this was false because Plaintiff submitted this assignment in February 2022, and any delay in execution of the project was attributable to Ms. Kaliski and Mr. Clauser, who were still working out budget issues associated with its implementation.

91.     Nevertheless, on April 25, 2022, Plaintiff provided Defendant with a third doctor's note, which read as follows:

> "[Plaintiff] is a patient in my care for treatment of a condition that causes stiffness in her joints and an elevated sedimentation rate which may indicate seronegative rheumatoid arthritis (SNRA). SNRA is an autoimmune disease. Additional symptoms that [Plaintiff] experience include fatigue, nonrestorative sleep and arthralgias in her hands and ankles. I recommend that [Plaintiff] be permitted to work from home through 9/22/22, if possible, in order to prevent her from being exposed to potential infections. Her next appointment with me is in June at which time she will be reevaluated. She has been referred to a neurologist and a urologist for further testing to determine the ultimate cause of ongoing symptoms."

92.     Then, on or about April 26, 2022, as part of the company's investigation, Plaintiff met with Mr. Gulezian and recounted all of Defendant' discriminatory conduct and retaliation.

93.     In any event, over the next week, Plaintiff did not hear from Ms. Horvat, or anyone at Defendant, regarding whether her accommodation request had been approved.

94.     Therefore, on or about May 9, 2022, Plaintiff emailed Ms. Horvat and asked for an update on the status of her request. Ms. Horvat told Plaintiff that her request was still being reviewed, and that she could continue working from home until a decision was made.

95.     Three days later, Ms. Horvat informed Plaintiff that she was approved to work from home until June 30, 2022, and that her accommodation request would be reevaluated at that time.

96.     Therefore, for the next month, Plaintiff kept working remotely on a full-time basis.

97.     Then, on or about June 24, 2022, Chief Operating Officer, Judi Cassel, emailed Plaintiff a "Confidential Memorandum" informing her that Mr. Gulezian had concluded his investigation, and could not substantiate her allegations of harassment or retaliation.

98.    This memorandum also characterized Ms. Kaliski's excessive oversight as "reasonable," and attributed it "to performance-related deficiencies identified by [Plaintiff's] managers."

99.    However, this was pretext because before her request for a reasonable accommodation, Plaintiff had never received any negative feedback or criticism regarding her work performance.

100.    In fact, Plaintiff had received positive performance reviews from Defendant in 2019, 2020, and 2021.

101.    In reality, Defendant conducted a biased, perfunctory investigation into Plaintiff's complaints, and had no intention of accommodating her, or remedying the harassment.

102.    Nevertheless, on or about June 28, 2022, Plaintiff emailed Director of Human Resource Operations, Jennifer Brennan, to follow up on the status of her accommodation request, and to see if it would be extended past June 30, 2022.

103.    Ms. Brennan replied, "Your last doctor's note indicated you would be reevaluated in June [2022]. Did you have your reevaluation and do you have an updated doctor's note to provide?" Plaintiff confirmed that she was reevaluated by her doctor in June 2022.

104.    Plaintiff also told Ms. Brennan that she did not think providing an updated note was necessary, given that her previous doctor's note recommended that she keep working fully remote until September 22, 2022.

105.    Still, Ms. Brennan insisted that Defendant needed another doctor's note to evaluate her request, and told Plaintiff that she could working from home until said note was received.

106.    On or about July 11, 2022, Plaintiff provided Ms. Horvat with a fourth doctor's note, which reiterated her symptoms of joint stiffness, fatigue, nonrestorative sleep, and arthralgias

in her hands and ankles. Plaintiff's doctor also reiterated that her symptoms suggested SNRA, and recommended that Plaintiff be allowed to continue working fully remote until September 22, 2022.

107.    That said, over the next two weeks, Plaintiff did not hear receive any update from Ms. Brennan regarding her request.

108.    Then, on or about July 28, 2022 in an email, Ms. Brennan informed Plaintiff that her accommodation request to continue remotely on full-time basis had been denied. Ms. Brennan also told Plaintiff that she would have to begin reporting to the office on August 1, 2022.

109.    Finally, rather than engaging in the interactive process to reasonably accommodate her, and in order to pressure her to resign, Ms. Brennan offered Plaintiff a severance agreement for a total amount of $26,794.61, which hinged on a release of claims against Defendant.

110.    Unwilling to jeopardize her health or go against her doctor's recommendations, Plaintiff felt that had no choice but to resign from her position at Defendant. Plaintiff also refused to sign Defendant's severance agreement.

111.    Therefore, on or about July 28, 2022, Plaintiff was constructively discharged by Defendant.

112.    Defendant's actions were intended to create a hostile work environment that no reasonable person would tolerate.

113.    Defendant's actions were intended to constructively discharge Plaintiff.

114.    Defendant could have easily accommodated Plaintiff's request to work from home on a full-time basis without enduring undue hardship.

115.    Plaintiff's lack of a formal diagnosis for her medical condition was not a legitimate ground for Defendant to deny her reasonable accommodation request.

116.   Plaintiff's medical condition was well documented and substantially limited one or more of her major life activities.

117.   Defendant failed to provide Plaintiff with a reasonable accommodation.

118.   Defendant failed to engage in the interactive process.

119.   Defendant would not have harassed or discriminated against Plaintiff but for her sex/gender and actual and/or perceived disability.

120.   Defendant would not have retaliated against Plaintiff but for her complaints of discrimination, sexual harassment, and retaliation.

121.   As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed. .

122.   As a result of Defendant's discriminatory and intolerable treatment of Plaintiff, she suffered and continues to suffer severe emotional distress and physical ailments.

123.   Because of the acts and conduct complained of here, Plaintiff has suffered and will continue to lose income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

124.   As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against Defendant.

**COUNT I – Title VII**
**Sex Discrimination; Hostile Work Environment; Retaliation**
***Plaintiff v. Defendant***

125.   Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

126. By committing the foregoing acts of discrimination and retaliation against Plaintiff, including subjecting Plaintiff to a hostile work environment and constructively terminating her employment, Defendant has violated Title VII.

127. Said violations were intentional and with malice and/or reckless indifference to Plaintiff's rights and warrant the imposition of punitive damages.

128. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

129. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless and until this Court grants the relief requested herein.

<u>**COUNT II – ADA**</u>
**(Disparate Treatment; Retaliation; Failure to Accommodate)**
***Plaintiff v. Defendant***

130. Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

131. Defendant has violated the ADA by committing the foregoing acts of disability discrimination and retaliation against Plaintiff, including, without limitation, failing to engage in an interactive process and/or provide Plaintiff reasonable accommodations, subjecting Plaintiff to a hostile work environment, and constructively terminating her employment.

132. As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless this Court grants the relief requested herein.

133.    Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants imposing punitive damages.

## COUNT III – PHRA
**Sex Discrimination; Disability Discrimination; Failure to Accommodate;**
**Hostile Work Environment; Retaliation**
*Plaintiff v. Defendant*

134.    Plaintiff incorporates the foregoing allegations of this Complaint as if set forth herein in their entirety.

135.    By committing the foregoing acts of disability discrimination (including failure to accommodate), sex discrimination, and retaliation against Plaintiff, Defendant has violated the PHRA.

136.    As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein and has incurred attorneys' fees and costs.

137.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's unlawful acts unless and until this Court grants the relief requested herein.

## RELIEF

   **WHEREFORE**, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that this Court grant her the following relief by:

(a)    declaring the acts and practices complained of herein to be in violation of the Title VII;

(b)    declaring the acts and practices complained of herein to be in violation of the ADA;

(c)    declaring the acts and practices complained of herein to be in violation of the

18

PHRA;

(d)     enjoining and permanently restraining the violations alleged herein;

(e)     entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(f)     awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(g)     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

(h)     awarding punitive damages to Plaintiff;

(i)     awarding Plaintiff any other damages that are appropriate under the Title VII, the ADA, and the PHRA;

(j)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

(k)     granting any other relief that this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury.

                                    **SIDNEY L. GOLD & ASSOC., P.C.**

                                    By: /s/ Brian C. Farrell
                                        Brian C. Farrell, Esquire
                                        PA ID No.: 319145
                                        1835 Market Street, Suite 515

19

Philadelphia, PA 19103
(215) 569-1999
bfarrell@discrimlaw.net
*Attorney for Plaintiff Whitney Price*

Date: January 23, 2024